Our next case this morning is Lindsey v. Neal. So we will start with Mr. Leoy. Whenever you're ready, sir. Your honors, may it please the court. My name is Sam Leoy, appointed counsel on behalf of Stephen Lindsey. There comes a point when justice delayed is justice denied. That happened here. Stephen Lindsey's post-conviction relief petition has been idling in a state court for over six years. That delay is inordinate, unjustified, and attributable to the state. Indiana has failed to move this case forward toward a resolution. Mr. Leoy, has there been any activity at all? Still no, your honor. Still no. So after repeatedly facing state-imposed roadblocks and his motions lingering without any prospects of the case moving forward to this day, as your honor just pointed out, Lindsey decided to take his case to federal court so that it could finally be heard. This court's case law confirms that Lindsey made a reasonable decision in light of the unreasonable circumstances that he faced. Under this court's precedence, then, his exhaustion requirement should be excused, and this case should be remanded to the district court for further proceedings. I welcome this court's questions. But otherwise, I can continue to dig right into it. Well, let me ask this. Do you think we ought to be touching on this appeal the merits of the ineffective assistance of counsel theories? No, your honor. As I pointed out in the briefing, I think the right course of action, since no court has yet weighed in on any of the substantive issues, is just to remand this for the district court to decide in the first instance. And as I pointed out, your honor, in the COA, I only pointed out a few of the issues in his federal habeas petition. He has a lot more, and I would say a lot more that are weighty and worthy of consideration. Could I also ask you, in the state court docket, it looks like in December of 2021, Mr. Lindsey moved to amend his petition. Yes, your honor. I haven't done a close analysis. I don't know if you have, to see what were the amendments about. I haven't done the full compare and contrast, your honor. My understanding is the basic facts were the same. He added some things and added some substance to it. There's a lot in his petition, so it's a lot to kind of follow, and it's hard to run the red line on it. Okay, and I would be remiss if I didn't ask you, you think the delay here has been unreasonable. When do you think it became unreasonable? Yeah, good question, your honor. I mean, my position, as we briefly pointed out in the brief, I think it would have been reasonable for Mr. Lindsey in December of 2020, before he was erroneously appointed counsel. I think at that point there was an inordinate delay and nothing had moved forward. I obviously think several years later, after still not much progress towards a resolution, it's definitely an inordinate delay at this point as well. But I think that was a good kind of earlier marker of when it was inordinate. Mr. Lloyd, the appellee talks about the general rule that a plaintiff or petitioner has an obligation to pursue their case, to move the case along. And, you know, it seems like we have these long gaps, right, that Mr. Lindsey would have had some opportunity if he wanted to, to file another motion, and who knows whether that would still be pending, you know, for another status hearing or kind of figuring things out or saying, hey, look, I'm still out here, by the way. And after November of 2019, we don't really see much of that. And I wonder how you would respond to that argument. Yeah, my response is, you know, at a certain point, enough is enough. And I don't think this court would encourage pro se litigants to repeatedly file motions every few months if they have not heard from the court. I'll point out that Mr. Lindsey did file a motion for a status hearing or a hearing. And then he filed another motion, you know, asking for the court to rule on that and for status and all of those things. So I think he did enough. He tried to prod the case forward. It's on the state to, you know, rectify the impasse that happened later on in the court. And the state court and the state prosecutors have done nothing to move the case forward. And I don't think it's reasonable to impose on a pro se litigant to repeatedly file more and more motions. Counsel, is there anything in the record that shows that Mr. Lindsey himself, because of COVID lockdowns and facilities, was impacted in his ability to move the case forward? Is there anything in the record about that? Nothing in the record, Your Honor. I mean, I have a pretty limited record, the same record this court obviously has. And there's nothing that says that he was impacted. But I think it's reasonable to assume that he could have been impacted. I know a lot of library services were down in prisons during this time. And I think that kind of cuts against the district courts and the state's argument that the COVID lockdown would have justified this delay. I think just the opposite. There's reason to say that it's unreasonable that the state was tardy on a lot of motions when Mr. Lindsey was clearly doing all he could from prison, you know, during COVID to move the case forward. And the state could not do anything. Let me ask you, you asked for an alternative form of relief for us to remand for an evidentiary hearing on the delay, whether it was inordinate. What would that hearing look like in your view? Good question, Your Honor. I mean, obviously, I think it would be helpful to get a full picture of all of the record documents from the state court as to what was going on. But just taking a step back, I mean, my primary relief requested is for this court to just go ahead and hold that the exhaustion requirement is excused. I think regardless of what that hearing would show, I think it's pretty clear at this point that the state proceedings were ineffective and there's no need for the hearing. But, you know, if this court were inclined to rule against me, I think I would prefer that they didn't do that and they had a hearing in the district court rather than that. But it's also possible they could get more understanding of what was going on with the state proceedings, why the court ruled the way they did, maybe more understanding of how COVID might have impact the state court at that time. But again, I don't think the court needs to do that to rule in Mr. Lindsay's favor. And along those lines, you know, all courts were impacted, particularly in the spring of the COVID year 2020. You know, the district court here was closed for a while. Do you know when it was that the I think it's the Porter County court kind of closed due to COVID and when it started holding proceedings again? I don't know the exact timing. I mean, I assume it was probably around the time of March 2020, which was well after a lot of these motions were filed. I know there's a couple of the orders that were cited between the two parties. I'd have to go back and look. I think one was in August of 2020, and I don't recall when the other one was. But obviously, the state court systems did try to move cases along. You know, after there were brief delays, they made it a priority to make sure that cases moved along. And this was just not one of those priorities. And if I may, I think I would just like to reiterate what I think are the two biggest defects in the district court's order and what I think potentially led to the contrary decision that it reached. The first was the factual mistake by the district court. I mean, it might seem like just a technical error, but I think it's a lot more than that. The district court, when it was reading the record, you know, in all fairness, it was probably reading the record quickly. And it thought that the district court or the state court was responding quickly in December 2019 to address these issues. But I think it's a pretty fundamental mistake that it was actually in December of 2020, a whole year later. So these were not quick actions. And it also showed that there was not appointed counsel for an extended period of time. It was for a very short period of time. And I think that might have perhaps influenced the district court's decision. And then I think the legal mistake by the district court, respectfully, was the whole issue about appointed counsel and whether that somehow mooted all of the prior actions. I don't think that's what Indiana law requires. No one ever represented to Mr. Lindsay that his prior motions that he filed and that were still relevant were mooted. So I think those two mistakes are probably the two biggest. And I think those two alone might explain the district court's prior decision. And if I may add a third, I think the fact that Carter and Evans, you know, two of the leading and most recent decisions by this court, were not cited by the district court. And the state, for its part, hasn't really engaged with those decisions. And I think that's because those are controlling, in this case, and lead to reversal here. Mr. Leoy, let me ask you about what I will call the delicate federalism part of this, which is if we agree with you for any form of relief, we will be saying to the Indiana state courts something fairly strong about how they need to manage these cases. What do you think that message should be? How specific? How intrusive? Thanks for the question, Your Honor. I would say this court can do something similar to what it did for Wisconsin and Carter and what it did for Illinois and Evans. And it's making clear to Indiana that once there's been an inordinate delay, there is an obligation on the state court to move the case forward, unless, of course, they are fine with the petitioner opting out and moving into federal court. So you can make clear that this is the consequences if there's not more action by the state court of state prosecutors to move the case forward. I don't think anything stronger than that is required, but I think it would be a helpful reminder for the Indiana state court that there is an obligation to not let these cases languish. Should we frame an opinion, if we agree with you, in terms of anything specific like a year of inaction or two years of inaction or four, five? I think, Your Honor, I don't think you need to make that decision. I think the answer is clear in this case that six years with little to no progress is enough. I think this court can point to some of the other cases and say, here are other instances where we found a delay was inordinate. Obviously, it's a little bit context-dependent on what movement is happening in the case, but you can make clear this utter lack of movement and this extremely long period of delay is inordinate and thus ineffective. Counsel, I read Carter, and I think the judge in that case called it tragic and extreme. In that case, you had the complicity of the appellate court granting something like 10-plus extensions. Right, Your Honor. That feels much more extreme than what happened here. What's your best argument to say that Carter should apply? Because I see a very different set of facts here. Right, Your Honor. I agree that the facts are different, and I think the other distinction there was that there was a sentence, a shorter sentence, but I would say both the principles underlying Carter are relevant here. The alarm bells that should be ringing in the state court and for the state prosecutor to break up the impasse, that's still relevant here. And I'd point to the court's decision in Evans, which is also a different set of facts than this case, but it shows that little to no progress or repeated delays over a long period of time, those would be attributable to the state, and I think that's the same thing that happened here. And so even if the facts are not the same in Carter and Evans, I think this is just another set of egregious facts that this court can correct, or at least that this court can say is ineffective. Mr. O'Leary, with regard to the appointment of counsel by the court and then the subsequent motion to withdraw, the motion to withdraw on its face, the only grounds that it stated was that, you know, that Mr. Lindsay never wanted an attorney. Is there anything in the record that would suggest that the motion to withdraw was based upon, you know, a fracturing of the relationship between counsel and Mr. Lindsay? Did Mr. Lindsay ever want an attorney in this case, to your knowledge? To my knowledge, no. He reported from the beginning in his affidavit of indigency that he did not want counsel. I mean, respectfully, Your Honor, hopefully myself excluded, he had some bad experiences with counsel that he had in the past, and I think his preference was to move the case forward on his own. I don't think he, from my understanding, I don't know how much of this is in the record, I don't think he felt very excited about the appointment of counsel, and the responsiveness there, but I don't know how any of that is in the record. I think the motion to withdraw just says that the appointed counsel reached out to Mr. Lindsay, pointing out that he didn't ask for counsel and confirming whether he did, and then we see the motion to withdraw. It was almost immediate, right? Correct, Your Honor. Are there any further questions? Thank you. Ms. Murray. May it please the Court. This Court should affirm the dismissal of Mr. Lindsay's petition for a writ of habeas corpus because he has failed to exhaust his state court remedies as required, and that failure should not be excused. Mr. Lindsay has an ongoing state post-conviction proceeding, and that state process has not been ineffective. Mr. Lindsay has been ineffective at prosecuting his claims. What else was he supposed to do? He has a number of tools in his tool belt that he can use at this time. He could, if he has discovery issues, which he has indicated he is still at this time not ready for an evidentiary hearing, he would like additional discovery conducted. He could move Trial Rule 37 to compel discovery. Mr. Lindsay notes that there has been discovery objections on the record, but that does not mean that court intervention is necessary. A party may simply acquiesce to an objection. Has a hearing date been set? A hearing date has not been set. I'd like to be clear. And he asked for that in 2019, correct? He asked for a hearing in August of 2019. He asked for a status update in November of 2019. Those remain pending, correct? Those could be viewed as still pending, yes. But that is a red herring whether or not those issues are still pending. What matters is whether Mr. Lindsay has been deprived of an effective state court process, and he's not automatically entitled to an evidentiary hearing. He points to a rule. But isn't he entitled to a ruling on his motion for an evidentiary hearing? It is incumbent upon Mr. Lindsay to move the case forward. I just want to make sure I understand. So what you're saying is that Mr. Lindsay files a motion, and it's on the docket, and it just sits there, and the court has no obligation under its ethical obligations or whatever statutory obligations it has to address and rule on the motion. There may be some obligations to rule on the motion, certainly, but it has not become an issue at this time because Mr. Lindsay has repeatedly indicated that he is not yet ready for an evidentiary hearing. That motion is best viewed as Mr. Lindsay notifying the post-conviction court that he would like an evidentiary hearing. In post-conviction proceedings in Indiana, they often, particularly in a pro se context, proceed via affidavit instead of an evidentiary hearing, or a party will frequently move for summary judgment, and cases are handled that way rather than holding an evidentiary hearing. So Mr. Lindsay's motion is best viewed as notifying the court that he would like his case resolved that way, but in 2019 was the only time he has ever mentioned a request for an evidentiary hearing. He has not renewed that request. He amended his petition in December of 2021. How many times does he have to? Frankly, we see plenty of, as I'm sure you do, plenty of pro se litigants who bombard courts with repetitive requests, futile requests. Here we have somebody who asked politely once, no action for three months. He asked again for the status update, and that was more than four and a half years ago. He then amended his petition in December of 2021. Anything meaningful in that? Yes, it was a very significant amendment. He had multiple new claims. I believe it's D, E, and F that were substantive claims, brand new, and he had numerous new supporting facts to support his prior claims. This is a very, very— And how did the court react? It allowed him to amend. Did it take any action to move the case towards resolution? It did forward that petition to the prosecutor's office. The prosecutor was not required to file an amended answer at that time. However, we see that between the amended petition and the time of the amended answer, there was a new special prosecutor appointed, and they did ask for permission to file a belated response, which was granted during that time. A new special prosecutor certainly may have a different view of the case and want to file an answer at that time. Can I ask—I was just kind of mystified. What's with all the special prosecutors in this case? And they kept declining. There have been three. The first did decline appointment. The second was on the case from August of 2019 into, I believe, May of 2022, and then there was a new special prosecutor at that time. The second special prosecutor stated that he wanted to limit his practice, be a bit closer to home, and so that's why he asked for relief from that appointment. Why isn't this being handled either by the AG's office or by the prosecutor's office? The prosecutor indicated that he was in litigation with the original prosecutors for Mr. Lindsey's case, and he did not feel comfortable responding to those claims, so he did ask for relief from that appointment. I see. Okay. It is Mr. Lindsey's burden alone to move his case forward. The question of who is the burden to move a case forward in a state post-conviction proceeding is a matter of state law that may not be second-guessed in a federal habeas proceeding, and state courts have been very clear that it is Mr. Lindsey's burden to move his case forward. He's taken no action. Can you point us to the provisions in the Indiana trial rules or the post-conviction rules that give him the tools that you think he has failed to use? Yes, Your Honor. He can move for summary judgment, which he has not done. He can utilize the post-conviction rules. How could he possibly move for summary judgment on this record? He may submit evidence in that he can submit affidavits, depositions, parts of the record, and then move for summary judgment if he would so desire or if he would like additional discovery as he is now requesting. He has indicated now he is not ready for an evidentiary hearing. He would like additional discovery. He can use Trial Rule 37 to compel discovery. Counsel, has Mr. Lindsey served any discovery on this state? I'm a little confused by this limited docket that I see here. He asked, there was a motion requesting discovery filed in January of 2022, and the state appeared to respond to that, and then the state issued discovery on Lindsey, but then did Lindsey serve discovery on you all? He has asserted that he has done so. Most discovery in Indiana is done informally and is not necessarily documented on the record. We do see that some discovery was documented in 2022. The parties were actively litigating at that time, and Mr. Lindsey has taken no action since September of 2022. So he has indicated that he has served that. I have not confirmed that with the prosecutor, but he has certainly asserted that he has served some discovery on the state. And has the state answered any discovery? We can see that the state has answered some discovery. They did object to his request for a particular personnel file. But, again, these are routine processes that occur when litigating these claims. Certainly just because a party has objected to discovery does not mean that the state court is under an obligation to step in at that time. There is a mechanism for doing so, and it is Trial Rule 37, which is a motion to compel. So this discovery that Lindsey issued on the state, when was that? Do you? So the case, I'm just trying to figure out what's happening in this case, because there was very limited here in this state court docket. And there's assertions in the briefs about discovery ongoing, but without any indication of what that is. Certainly, and, again, most discovery is done informally. It's not necessarily noted on the docket. But we can see in 2022, the state responded to Mr. Lindsey's discovery in July, July 8th of 2022. The state filed a notice of discovery and a discovery request in August of 2022. And Mr. Lindsey filed answers to interrogatories and production requests and an objection to the state's request for production and discovery in September of 2022. Those answers to interrogatories also indicated that he was not yet ready for an evidentiary hearing at that time. His research was ongoing. He stated that he may yet identify witnesses to support his claims. His claims continue to morph and amend, and that makes sense when we have such a large record. Like this case, this is a murder conviction, a month-long trial. There are over 12 volumes of transcript. There are over 300 exhibits. It will take time to go through this record. That doesn't sound that extraordinary, frankly. We see a lot of habeas cases out of murder cases. It may not be for someone who's regularly litigating, but for a pro se litigant, it will take additional time. We see even now Mr. Lindsey has presented claims that have never been presented to the state court. One of the claims identified by this court, ineffective assistance of counsel for failing to hire a blood spatter expert, has never been presented to the state court. He mentions blood spatter expert in the context of ineffective assistance of counsel for alleged prosecutorial misconduct, but that is a very different claim than the one that he is bringing in habeas. Ms. Murray, do you see any potential for a hearing on an evidentiary hearing in which the district court would examine the circumstances and reasons for the delay? Mr. Lindsey has only today identified things that may come out during that hearing. The delay here seems to be no mystery. Mr. Lindsey has taken no action on his case since September of 2022 and indicated that he was not ready for an evidentiary hearing at that time. This is much more in line with ciphers with Lane. In ciphers, there was an 11-year delay. In Lane, there was over a five-year delay. And there, this court said that an evidentiary hearing was not necessary because all the petitioner need do is to act to get his case back on track. Mr. Lindsey may do so. Mr. Lindsey may ask for an evidentiary hearing once more on his amended petition, something that's never been done. He can ask for a status update to say, I am now ready. I know that I've indicated I have not been previously ready to litigate these claims, but I am now. And he can say that at a status conference, in which case the case may get back on track. It is his burden to do so. Does the court have any obligation here, state court? At some point in time, the court may have some ethical professional responsibility to manage his docket, but the Indiana state courts have been very, very clear that even though a court may have tools to help a plaintiff move his case along, it is under no obligation to do so. It's said as much in Carruthers v. State, an Indiana Court of Appeals case from 2016. The Indiana Supreme Court said in State v. Azania that it is the defendant's burden to move his case forward in a petition for collateral review. This is unlike Carter's. This is unlike Evans'. In those cases, we see significant actions taken by the prosecutor or the state court that hindered a petitioner's efforts to litigate his claims. We have no similar action here. In Carter, there were significant extensions asked for. There was an issue with the transcript. There was a 10-month delay in acquiring the transcript. We don't have any issues with the record. We see Mr. Lindsay was able to provide the record to the district court here. There were 12 extensions requested by defense counsel in Carter, and then the state court also were granted extensions to rule. It's notable that in Carter, that is a Wisconsin court case, which is distinguishable from what we have here. This court has noted multiple times that Wisconsin has a unique procedure in which it combines post-conviction and direct appeal. The defendant there had pled guilty, and after four years, there was no review of any kind of his case. That is a very different situation than Mr. Lindsay, who has had direct review completed, and this is a purely collateral review proceeding. Ms. Murray, there is a case by the Indiana Supreme Court in Ray Hawkins, 902 Northeast 2nd, 231-2009, where an ethical complaint was brought against a judge and a commissioner for delays in addressing post-conviction petition. There, the Supreme Court in Indiana said, flat out, Canon 3B9 requires judges to dispose of all matters promptly and efficiently. It is essential for all judicial officers to have in place procedures to ensure not only that judges make a timely decision, but also that the order is correctly and promptly processed. So it seems to me that the Indiana Supreme Court is recognizing, even in post-conviction proceedings, that a judge has some ethical obligation to keep things moving. And the question becomes, I guess to you, here we see a delay of three, four, five years. How long do you think is long enough for a judge to just sit on a case? Here, this court has noted in Lane and in Cyphers, in Cyphers there was an 11-year delay. In Lane there was a five-and-a-half-year delay. And because the petitioner had the ability to put the case back on track, just as Mr. Lindsay has the ability to put his case back on track by filing motions reiterating his request. So your position is that a court can do nothing in a case for 11 years and still meet the court's ethical obligations in Indiana? The ethical obligations may be a separate matter. And certainly there is some duty on the court to adhere to those obligations and to ensure that it manages its court docket responsibly. And so when a litigant files a motion, isn't it reasonable for the litigant to expect the court to actually rule on the motion or process the motion in one way or the other? Not when he is indicating that he is not ready for the request that he has made. So what about the motion for requesting status, right, of previously unanswered motions? The court never addressed that. You're absolutely right, Your Honor. And we can see what happened during that time. It took over a year for the state court to review Mr. Lindsay's case. We know that the COVID-19 pandemic hit during that time. There was 144 days between Mr. Lindsay's request in November of 2019 for a status conference and the time that the state court addressed his case in December of 2020. 144 days, we're told, pursuant to Indiana Supreme Court orders because of the COVID pandemic. I'm sorry, how many days? 144. 144. There were four different orders issued by the Indiana Supreme Court, one on March 23rd, 2020, one on April 3rd, 2020, one on April 24th, 2020, and one on May 29th, 2020. And in total, those told, I believe, 144 days of that time. So over a third of that time was told, and they recognized that there were going to be a backlog of cases, that it would take time to work through those cases, and certain cases were given priority during that time, speedy trial requests, things of that nature. So it did take time. One other question, the motion for leave to amend the petition that was filed on December 14th, did the court issue an order granting that motion? It did not issue an order granting that motion. It did forward that request to the prosecutor's office, and then it did allow the prosecutor's office to file a belated answer to that. So it seems to have acquiesced to that, and it would have been an error to deny that request, because they are entitled to that as of right, that first amendment. So overall, we see that the state court process, it has not been perfect, certainly, but he is not entitled to a perfect process. He's entitled to an effective process. And we have the prosecutor who has been responding. He complains that they missed a couple of deadlines, and we see that the first answer, his first petition was not served on the state, and they answered within two weeks of being served. Okay, thank you. I'm sorry. Oh, forgive me. Thank you so much. Thank you, Ms. Burke. Mr. Leroy, I will give you two minutes for rebuttal. Thank you, Your Honor. And just a few points that I want to clarify for the court. So one, my friend on the other side mentioned that it was 144 days, you know, before the court responded in December 2020. But I don't want the court to lose sight of the fact that its response was a non-response. Its response was to appoint counsel, even though that Mr. Lindsay specifically said that's not what he wanted. And then the district court has not otherwise, you know, it's only been able to guess as to why the state court responded as delayed of a way as it did. On the point about ineffectiveness, my friend on the other side repeatedly focuses on state law. I think I have some quibbles with the state law itself, but I want to reiterate that this is a federal question of whether or not the proceedings are ineffective. Carter and Evans make clear that at a certain point the obligation is on the state to recognize an issue. But on the state law itself, my friend on the other side points to latches cases, and I just don't find those persuasive for the context here. My friend's not saying that Mr. Lindsay unduly delayed the proceedings or prejudiced the side by failing to act in any way. Just the opposite. Mr. Lindsay's been repeatedly trying to prob the case along. The fact that he hasn't, you know, done even more to perhaps annoy the court and file repeated motions, I don't think should go against him. But, again, to reiterate. The state's best argument, at least in my view, Mr. Loy, is in essence the point that we heard, that Mr. Lindsay has indicated he's not yet ready to try the issues yet. What's your response? Happy to address that, Your Honor. So the motion to amend, I don't think it restarts the clock in any way. As they point out, as the state points out, the rules specifically provide that you can leave to amend as long as it happens more than 60 days before the hearing is set. So that, at least to me, suggests that it's commonplace. For the hearing to be set, there might be moving pieces beforehand, but that doesn't mean that you shouldn't set the hearing and allow kind of that structure in place to get everything ready before those proceedings. So I just don't think that the motion to amend should take away from the fact that the court failed to respond to a lot of motions beforehand, and it was reasonable, then, for Lindsay to think that the court was just never responding. I see my time is up. Thank you. Thank you, Your Honor. Thank you, counsel, for the argument. And, Mr. Leoy, I understand that you and your firm have been appointed. We thank you for your advocacy in this case. Take the case under advisement.